1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 06-00494-TUC-RCC (GEE) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| LORI ANN LOUDON AND CLIFFORD MORGAN MCCURDY, | ) | |
| Defendants. | ) | |

The District Court referred this case to the Magistrate-Judge for hearing on pretrial motions. Hearing on defendants' and the government's pretrial motions was held on August 30, 2006. Upon consideration of the arguments of respective counsel, the Magistrate-Judge recommends the District Court accept the recommendations set forth at the end of this report.

## CHARGE:

A two count indictment charges that on February 12, 2006, the defendants transported two undocumented persons for the purpose of commercial advantage and private financial gain in violation of Title 8, U.S.C., §§1324(a)(1)(A) and 1324(a)(1)(B)(i).

atty's faxed
SPA 11/17

1
## FACTS:

2    On February 12, 2006, a Border Patrol agent operating a checkpoint on State Route 85,

3    at milepost 58, received a call from the Ajo Border Patrol Station advising that the Lukeville

4    Port of Entry had reported possible illegal aliens loading into a white Ford Explorer with

5    Arizona license plate #629-SJZ at the Gringo Pass Restaurant in Lukeville.  Moments later

6    a vehicle matching the description approached the checkpoint.  Loudon, the driver, and

7    McCurdy, a passenger, identified themselves as U.S. citizens.  Having obtained permission

8    to search the vehicle, the agent found two individuals attempting to conceal themselves under

9    a blanket and the factory cargo cover; these two admitted being illegally in the U.S.

10    Loudon stated she had traveled to Lukeville to pickup her friend, McCurdy, at a restaurant.

11    After remaining sometime at the restaurant, she and McCurdy got into the white Explorer and

12    proceeded to drive north.  The defendants denied knowing the illegals were in the Explorer.

13

14
## MOTIONS AND DISCUSSION

15    It should be noted that no party presented any evidence in support of the motions;

16    furthermore, defense counsel waived Loudon's presence for the hearing.

17

18
### *Rule 404(b) Evidence*

19    On April 6, 2006. the government filed a Notice of Intent to Introduce Evidence Pursuant

20    to Rule 404(b) at Trial and Offer of Proof; the government asked also that a determination

21    be made regarding the matter prior to trial.  The proffered evidence relates only to defendant

22    Loudon who objects to its use.

23    According to the government, on December 5, 2004, a van driven by Loudon was stopped

24    in southern Arizona on Highway 85 at a Border Patrol checkpoint.  A male passenger–not

25    the current co-defendant–was a passenger.  After receiving the driver's consent to search, the

26    agent found four (4) Mexican nationals in the van who were determined to be in the country

27

28

1 illegally and were subsequently deported/removed. No charges were filed against either
2 Loudon or her U.S. citizen passenger.

3     The Ninth Circuit permits the admission of 404(b) evidence if: (1) there is sufficient
4 proof for the jury to find the defendant committed the other act; (2) the other act is not too
5 remote in time; (3) the other act evidence is offered to prove a material issue in the case; and
6 (4) the other act is, if knowledge or intent is the consequential act the evidence is offered to
7 prove, similar to the offense charged. The evidence must also, independently of the
8 requirements of Rule 404(b), survive the Rule 403 balancing test, i.e., the evidence must have
9 probative value that is not substantially outweighed by the unfair prejudice that might result
10 from its admission.

11     Loudon argues the government will be unable to prove the "prior bad act" without relying
12 "largely on hearsay statements of the [undocumented aliens] arrested in December of 2004";
13 she argues this hearsay evidence would violate *Crawford v. Washington,* 124 S.Ct. 1354
14 (2004). In *Crawford* the Court held out-of-court statements by witnesses that are testimonial
15 are barred under the Confrontation Clause, unless witnesses are unavailable and defendants
16 had prior opportunity to cross-examine the witnesses. *Id.* at 1374. In the present case, it was
17 uncontroverted the alleged undocumented aliens from the 2004 incident are unavailable and
18 that defense counsel has had no opportunity to cross-examine them.

19     Loudon next argues the two events are too remote in time. The two events occurred 14
20 months apart. The government notes no bright line test has been established regarding
21 remoteness and cites cases wherein convictions eight, ten, even 13 years old have been held
22 to be not too remote and therefore admissible. Loudon cites no cases to support her position.
23     Loudon also denies the two incidents are similar, but points to no facts which distinguish
24 the two. Admittedly, the citizen passengers, the vehicles, the dates, and the illegal aliens
25 were not the same in both incidents. However, this court finds those differences are not
26 sufficient to render the 404(b) evidence inadmissible.

27
28

1    Loudon apparently concedes the 404(b) evidence will be admitted to prove a material fact;

2    but argues the unfair prejudice would outweigh any probative value.  Some courts have

3    indicated the assessment of the probative value of evidence entails a determination of

4    whether the proponent has other available evidence to prove the same consequential fact; and

5    if such other evidence is less apt to cause unfair prejudice, the probative value of the

6    proffered evidence is lessened. *United States v. Merriweather,* 78 F.3d 1070, 1077 (6th Cir.

7    1996). The defendant does not suggest any other evidence available to prove the

8    consequential fact at issue in this case,

9    The prejudice against which the probative value of the other acts evidence is weighed

10   must be "unfair prejudice", not simply the prejudice that any relevant evidence would create.

11   Thus, to create unfair prejudice, the evidence must have a tendency to provoke an emotional

12   response in the jury or otherwise to suggest a decision on an improper basis.  This court does

13   not believe  the proffered evidence of a prior bad act would create unfair prejudice to

14   defendant Loudon. *See United States v. Chea,* 231 F.3d 531 (9th Cir. 2000)(two prior

15   uncharged robberies properly admitted to show knowledge, intent, and planning); *United*

16   *States v. Rrapi,* 175 F.3d 742 (9th Cir. 1999)(evidence of other attempted burglaries properly

17   admitted to show plan, preparation and intent).  Furthermore, the trial court can give

18   appropriate curative instructions to guard against any unfair prejudice.

19   In view of the foregoing, this court believes that although the majority of the factors to be

20   considered before admitting the proffered 404(b) evidence weigh in favor of its admission,

21   to the extent the government will  rely on the hearsay statements of the illegal aliens involved

22   in the 2004 incident to establish the fact of their alienage the government should not be

23   allowed to introduce that incident as a 404(b) prior bad against defendant Loudon.

24

25   ***Motion to Sever***

26   Co-defendant McCurdy argues that if the aforementioned 404(b) material is admitted into

27   evidence, then his trial should be severed from Loudon's pursuant to Rule 14, Fed. R. Crim.

28

- 4 -

1    P., because a joint trial "is likely to cause imputation of her prior bad acts onto [McCurdy]."

2        A case involving multiple defendants where some of the evidence is admissible only

3    against one defendant does not automatically require severance. *United States v. Erickson,*

4    75 F.3d 470 (9th Cir. 1996).   The granting or denial of a severance under Rule 14, Fed.

5    R.Crim.P., is a matter within the trial court's discretion.  "The ultimate question is whether

6    under all the circumstances of the particular case, as a practical matter, it is within the

7    capacity of the jurors to follow the court's admonitory instructions and accordingly to collate

8    and appraise the independent evidence against each defendant solely upon that defendant's

9    own acts, statements and conduct." *United States v. Campanale,* 518 F.3d 352, 359 (9thCir.

10   1975).  *Campanale* involved a nine count indictment charging at least six defendants with

11   a racketeering conspiracy  and various substantive charges, i.e., extortion, obstructing

12   interstate commerce, etc.  Noting the trial judge had "examined carefully" whether or not

13   justice required a separate trial as to any defendant or as to any count, and that the jury had

14   in fact distinguished among the defendants, finding some not guilty, others not guilty of one

15   or more offenses but guilty of others, the Court concluded, "Appellants have failed to

16   demonstrate any prejudice that would outweigh the benefit afforded to efficient judicial

17   administration by a single trial." *Id.* at 359.

18       The present case involves two counts wherein both defendants are charged with the same

19   offense occurring on the same date.  There are no problems here of a co-defendant's extra-

20   judicial statements, as in *Bruton v. United States,* 391 U.S. 123 (1968).  Given the nature of

21   the charges in this case and what this court perceives to be the straightforward nature of the

22   evidence to be presented, this court agrees with the government's assertion that, even if the

23   proffered 404(b) evidence is admitted against defendant Loudon, it will be simple for the jury

24   to compartmentalize the evidence in relation to each defendant; and the trial court can give

25   an appropriate limiting instruction to safeguard against possible confusion or "spillover

26   effect" as to defendant McCurdy.

27

28

                                          - 5 -

1 | ***Motion to Suppress Suggestive Pre-Trial Identification***

2 | As previously noted, neither side presented ***any*** evidence–testimonial or otherwise–during

3 | the hearing on pretrial motions. Technically, therefore, the defendants' motion to suppress

4 | should be denied. However, the government has raised no objection; therefore, this court

5 | will proceed based on the arguments presented.

6 | After the two illegal aliens were discovered in the rear of the Explorer on February 12,

7 | 2006, the defendants and the illegal aliens were all removed from the vehicle at the

8 | checkpoint. Defense counsel characterize this removal of the defendants from the Explorer

9 | at the scene of their arrest as a "show-up" and argue this "show-up" tainted the witnesses'

10 | subsequent identifications of the defendants.

11 | During their subsequent videotaped depositions  the illegal aliens/material witnesses

12 | identified the defendants as being present when everyone was ordered from the Explorer and

13 | also identified them as being present at the restaurant in Lukeville before they–the

14 | aliens–were instructed to get into the vehicle and cover themselves. They also testified the

15 | person who guided them had pointed out the defendants in the restaurant. Neither of the

16 | illegal aliens/material witnesses stated either defendant had directed them to enter the

17 | Explorer, nor did they identify either defendant as being the driver of the Explorer when the

18 | vehicle left the restaurant–it appears to be undisputed the Explorer was unoccupied when the

19 | two aliens were told to get in and they were already covered in the back of the Explorer when

20 | it was driven from the restaurant.

21 | The government argues the removal of all the Explorer's occupants at the checkpoint does

22 | not constitute a "show-up" or even a pre-trial identification. The government notes there is

23 | no evidence the defendants were either paraded before the witnesses in handcuffs or  that the

24 | witnesses were ever told the defendants  had been at the restaurant in Lukeville. Contrary

25 | to the defendants' assertion that the witnesses did not identify the defendants as being present

26 | at the restaurant until the time of the videotaped depositions, the government claims that

27 | during her tape-recorded interview on the day of her arrest, Reyes-Reyes–one of the illegal

28 |

- 6 -

1 | aliens/material witnesses-- stated she had seen the defendants at the restaurant in Lukeville
2 | before she got into the Explorer.

3 | This court agrees that the agents' actions in routinely removing all the occupants from the
4 | Explorer at the scene does not constitute a "show-up" or any type of police lineup practice
5 | which various Supreme Court opinions have sought to restrain in order to protect a
6 | defendant's due process rights. *See Neil v. Biggers,* 409 U.S. 188 (1972); *Foster v.*
7 | *California,* 394 U.S. 440 (1969); *United States v. Wade,* 388 U.S. 218 (1967); *Gilbert v.*
8 | *California,* 388 U.S. 263 (1967); and *Stovall v. Denno,* 388 U.S. 293 (1967).

9 | However, assuming *arguendo* that emptying the Explorer at the arrest scene could be
10 | characterized as a "suggestive" identification procedure which "'emphasize[d] the focus upon
11 | a single individual' thereby increasing the likelihood of misidentification". *United States v.*
12 | *Montgomery,* 150 F.3d 983, 992 (9th Cir.1927), the government must then show by clear and
13 | convincing evidence that the in-court identification was based on observations other than the
14 | illegal identification procedure. *Tomlin v. Myers,* 30 F.3d 1235, 1242 n. 16 (9th Cir. 1994)

15 | In this case the challenged identification is the identification of the defendants during the
16 | videotaped depositions of the illegal aliens/material witnesses. "[R]eliability is the linchpin
17 | in determining the admissibility of identification testimony...." *Manson v. Brathwaite,* 432
18 | U.S. 98, 114 (1977). If reliability factors outweigh the suggestive identification procedure,
19 | in-court identification is permissible. *United States v. Wang,* 49 F.3d 502, 505 (9th Cir.
20 | 1995). In evaluating the likelihood of misidentification, the court must consider the totality
21 | of the circumstances, and five factors have been identified: (1) the opportunity of the witness
22 | to observe the defendant at the time of the crime; (2) the witness's degree of attention; (3) the
23 | accuracy of any prior description by the witness; (4) the witness's level of certainty at the
24 | time of confrontation; and (5) the time between the crime and the confrontation. *Neil v.*
25 | *Biggers,* 409 U.S. 188, 199-200 (1972). The government argues the following: the witness
26 | saw the defendants in the restaurant for at least ten minutes; the witness paid attention to
27 | details as evidenced by her ability to describe the defendants from their appearance at the
28 |

1   restaurant and at the arrest scene; the witness accurately described the defendants during the

2   video deposition and also identified them during her taped post-arrest interview; the witness

3   affirmatively identified the defendants as persons she had seen at the restaurant and at the

4   arrest scene; and only seven weeks had elapsed between February 12, 2006, and the video

5   depositions on March 31, 2006.  It should also be noted defense counsel have had an

6   opportunity to cross-examine both the witnesses, and the reliability of the identifications was

7   strongly contested during the videotaped depositions.

8       In view of the foregoing, this court recommends the District Court deny the motion to

9   suppress the material witnesses' identification of the defendants' during their videotaped

10  depositions.

11

12  ***Motion for Brady Material***

13      The defendant had filed this motion on the date of the hearing.  The government indicated

14  it had not had an opportunity to review the motion and prepare a response.  It was agreed the

15  government would file its response and if the defendants took issue with the response they

16  would file an objection.  No objection has been filed to date.

17

18  ***Motion for Notice of Defenses***

19      Defendants advised they would not raise the defenses of alibi, incompetency, or public

20  authority.  Their defense will generally be that the illegal aliens/material witnesses lied

21  during their videotaped depositions and the government cannot prove its case beyond a

22  reasonable doubt.

23

24  ***Government's Motion for Reciprocal Discovery***

25      The government did not indicate there was anything in particular to which this motion was

26  directed.  The court reminded defense counsel of their obligations under the reciprocal

27

28

1  agreement they have with the government and that the trial court could impose appropriate

2  sanctions if they failed to comply.

3

4  ***Defendants' Motion for Discovery***

5  Defendants indicated this motion is moot because the government has provided the

6  requested material.

7

8  **RECOMMENDATION:**

9  In view of the foregoing it is recommended that after its independent review of the record

10  the District Court:

11  1. **DENY** the government's motion to admit the proffered 404(b) material to the extent

12  the government will have to rely on impermissible hearsay evidence to establish the alienage

13  of the alleged illegal aliens involved in the 2004 incident.

14  2. **DENY** defendant McCurdy's motion to sever his trial.

15  3. **DENY** the motion to suppress the pretrial identification.

16  4. **GRANT** the remaining motions **or** find they are **MOOT.**

17  This Report and Recommendation is being faxed to all counsel on this date. Each counsel

18  may serve and file objections within 10 days of today's date. **However,** if the current trial

19  date is not continued, the parties should be prepared to argue their objections on the morning

20  of trial. If objections are not timely filed the party's right to de novo review may be waived.

21  If objections are filed, they should be directed to the District Court by omitting the

22  magistrate's initials from the caption, i.e., CR-06-0494-TUC-RCC.

23  DATED this 17th day of November, 2006.

24

25

26

27  Glenda E. Edmonds
    United States Magistrate Judge

28